## Renick v. Renick.

(Decided Feb. 21, 1933.)

JOSEPH HIGGINS and TALBOTT, WHITLEY & CLINE for appellant.

DWIGHT L. PENDLETON, E. C. O'REAR and ALLEN PREW-ITT for appellee.

Opinion of the Court by Judge Richardson—Reversing.

The question to be determined by this appeal is the power of the circuit court to revise or set aside, after the expiration of the term at which it is rendered, a judgment for alimony, accompanying the judgment of absolute divorce, unless the court in its judgment expressly, or by necessary implication, reserves the control of the question of alimony.

On the 25th day of April, 1928, B. M. Renick filed against his wife, Elizabeth T. Renick, in the Bourbon circuit court, Bourbon county, Ky., a petition for a divorce a vinculo matrimonii, on the ground that she had abandoned him, March 16, 1927, without like fault on his part, and had not since resided with him. Although summoned, she made no defense. Judgment was rendered, January 29, 1929, on the petition and depositions. This language appears in the judgment:

"It is further adjudged that the plaintiff pay to the defendant, Elizabeth T. Renick, the sum of $150 per month, beginning the first day of July, 1928, and payable every succeeding month in advance until the termination by death of either party or until the remarriage of the party of the second part."

Before the rendition of the judgment, and while the action was pending, Elizabeth T. Renick filed against B. M. Renick in the state of Florida, an action to recover alimony of him. Preparations were made for the trial of the action in Florida, and the date of the trial was set, when she and B. M. Renick, on the

31st day of May, 1928, executed and delivered to each other, in duplicate, a contract by which she relinquished all claim to certain personal property described in the contract, and by a provision therein, the life insurance policies which had been issued on the life of B. M. Renick, and in which she was the designated beneficiary, were to be her property, subject to be defeated by her death or remarriage during the life of B. M. Renick. At the date of the contract he had a claim against her for $2,450, and she asserted one against him, and by the contract it is agreed that the one should be extinguished by the other. By another clause, both parties release and discharge the other "from any and all past obligations, or any future claims to maintenance, or property division, or an accounting, and all other things than those provided in the agreement." The contract contains this provision:

"It is stipulated and agreed that this instrument shall be treated and considered as a final settlement and adjudgment of all property rights and money claims between the contracting parties. The party of the second part expressly renounces and relinquishes all further claims upon the party of the first part, or to his property wherever situated, including homestead and dower right; and on the other hand, the party of the second part hereby expressly relinquishes, quitclaims and disclaims all right, title or interest in and to any of the real or personal property of the party of the second part, wherever situated, excepting of course, those things provided for by this instrument, with respect to furniture, maintenance and insurance policies."

It is also stipulated in the agreement that Elizabeth T. Renick was to dismiss her plea for divorce, pending in the circuit court of Penallas county, Fla. That portion of the agreement reads:

"It is further stipulated, agreed and promised by the party of the first part that if he shall succeed in procuring a decree of divorce brought by him and now pending in the state of Kentucky, there shall be embodied in the decree such parts of this agreement as the party of the first part may desire and such as are in accordance with the laws of Kentucky, and further promises and consents that there be embodied in said decree, if and when ob-

tained, that part of the provision of this settlement agreement, providing for the payment of one hundred and fifty ($150.00) dollars per month for the maintenance and support of the party of the second part."

Some time before the contract was signed and delivered, B. M. Renick had executed and delivered to Elizabeth T. Renick a contract by which he had agreed to pay her $200 per month. Over $2,000 was due under the latter contract, and it was this sum that extinguished the $2,450 claimed by B. M. Renick per the contract of date May 31, 1928. The former contract requiring him to pay $200 a month, and her future right thereto, are surrendered by her to him.

On the 12th day of September, 1929, he filed a petition in the Bourbon circuit court, setting forth that his earning capacity had been impaired, the value of his property and the income therefrom had depreciated, and he was unable to pay the $150 per month as decreed in his action for divorce, and he asked that the allowance be reduced to $25 a month.

Mrs. Renick was a nonresident of the state at the time of the filing of this petition; a warning order was made for the purpose of obtaining constructive service. At the regular November term, 1929, she filed an answer in which she traversed the petition, and further averred that no allegations were made in B. M. Renick's action concerning alimony, and no proof was taken on the subject; but that B. M. Renick in pursuance to, and in complaince with, their agreement of May 31, 1928, had caused to be included in the decree, the language which we have quoted. A plea of res adjudicata was presented by her answer, predicated on the judgment of the Bourbon circuit court, in the action for divorce, and the contract of May 31, 1928, was pleaded as an estoppel. After her answer was filed, the original action for divorce was redocketed and consolidated with the present action. B. M. Renick, by a reply, traversed the answer, and further alleged that the contract of May 31, 1928, "was procured by fraud and duress"; that at the time he discussed and signed it, he was in very delicate health, suffering from various painful and nerve racking carbuncles, and was physically unable to enter into any agreement; that at the time he signed it, he was in such feeble condition of mind and body, that he did not

realize or properly understand the terms and conditions thereof, and did not therefore enter into the contract, and that it was not his agreement, "and he should not be bound thereby."

Subsequently he filed an amended petition in which he reiterated the affirmative allegations of his reply, and sought the annulment of the contract of date May 31, 1928, and a reconsideration of the alimony awarded in the original action.

Pending the action in the Pineallas county circuit court, both B. M. Renick and Elizabeth T. Renick were residing at St. Petersburg, occupying separate apartments. B. Coleman Renick, their son, thirty years of age, a geologist by profession, residing at Houston, Tex., went to St. Petersburg for the purpose of effecting a settlement between them. His relation with each of them was that of a devoted, interested, and sympathetic son, with like affection and consideration for both of them. At that time a married sister of Elizabeth T. Renick resided at Nashville, Tenn. She and her husband also went to the state of Florida for the purpose of bringing about a reconciliation of B. M. Renick and his wife. Without knowing that B. Coleman Renick was on the way to Florida, Mrs. Renick's sister and her husband boarded the train on which he was traveling, and the three arrived at St. Petersburg on the same train. B. Coleman Renick first went to the apartment occupied by his mother, and then shortly thereafter visited his father. As to which of them he first discussed the matter of adjusting their differences, it is not clear. He learned that his mother was demanding $200 a month, the amount she was receiving under the pre-existing contract between them, and also the settlement of their property rights. The father was willing to pay her only $100 per month, and enter into a settlement of their marital and property rights. The son proposed to each of them, separately, that the amount to be paid monthly to his mother be reduced to $150 per month, and, if they would agree to the $150 per month, he would pay $25 of it himself. Both refused to permit him to pay the $25 per month; but the father agreed to pay, and she agreed to accept, the $150 per month, and enter into the contract of settlement. Meade Frierson, the husband of the sister of Mrs. Renick, was a disinterested, lifelong friend of both Mr. and Mrs.

Renick. He rendered both of them friendly advice and assistance, with a disinterestedness, and without distinguishing between them, in the making of the settlement. B. M. Renick claims that at that time he had a carbuncle "in" his nose, and also on the back of his neck, but his son and Frierson say that at that time he had a carbuncle on his neck, and there was only a scar on his nose where he had had a carbuncle. B. M. Renick had lost flesh, and was sorely afflicted with carbuncles at the time the contract was entered into between him and his wife. The lawyer who represented him in the divorce action participated in the making of the settlement and the contract between him and his wife, as did the lawyer who represented Mrs. Renick in the action for divorce. The latter prepared the contract and submitted it to the lawyer of Mr. Renick who made objections to certain portions of it, which were corrected in conformity with his suggestions, before the final preparation and signing of the contract. Mr. Renick's lawyer advised him not to sign the contract. There is a total absence of evidence showing or tending to show fraud or duress in the procuring of the contract. Hite v. Hite, 136 Ky. 529, 124 S. W. 815. On the contrary, the evidence satisfactorily shows that neither duress nor fraud was exercised by any one to induce B. M. Renick to sign and deliver the contract. Evidence was offered for the purpose of showing that he was mentally incapable at the time of comprehending the terms and provisions of the contract, and also mentally incapable of executing it. The evidence on this question falls far short of satisfactorily showing either the lack of capacity or the presence of mental unsoundness on his part at the time he signed and delivered the contract.

The portion of the judgment in the divorce action allowing to Mrs. Renick the $150 per month was inserted, without pleading or proof, at the instigation of B. M. Renick, in the absence of Mrs. Renick or her representative, in compliance with the expressed provision of the contract between him and his wife. For an indefinite period thereafter, he paid the $150 per month, according to the terms of the contract and the judgment. The predominant question to be determined is the power of the court to modify or vacate so much of the divorce judgment as awarded to the wife

634

the $150 per month until the death of either party or remarriage fo Mrs. Renick.

Section 2121, Ky. Stats. provides that where a judgment for divorce from bed and board is rendered, "such may be revised or set aside at any time by the court rendering it."

Section 2123, Ky. Stats., authorizes the court, after the judgment is entered, concerning the care, custody, and maintenance of the minor children of the parties or a child of unsound mind, or any of them, at any time, upon the petition of either parent, to revise or alter the same. This court in many cases has recognized and enforced these statutory provisions. The first section was construed in Roper v. Roper, 242 Ky. 658, 47 S. W. (2d) 517; Logan v. Logan, 2 B. Mon. 150; Lockridge v. Lockridge, 2 B. Mon. 258; Simpson v. Simpson, 201 Ky. 282, 256 S. W. 412; Van Meter v. Van Meter, 168 Ky. 783, 182 S. W. 950; Keach v. Keach, 217 Ky. 723, 290 S. W. 708; Clubb v. Clubb, 63 S. W. 587, 23 Ky. Law Rep. 650; Metcalf v. Metcalf, 244 Ky. 536, 51 S. W. (2d) 675. The latter was construed in McFerran v. McFerran, 51 S. W. 307, 21 Ky. Law Rep. 252; Shallcross v. Shallcross, 135 Ky. 418, 122 S. W. 223; Duvall v. Duvall, 147 Ky. 426, 144 S. W. 78; Stiles v. Stiles, 224 Ky. 526, 6 S. W. (2d) 679; Jasper v. Tartar, 224 Ky. 834, 7 S. W. (2d) 236; Campbell v. Campbell, 233 Ky. 423, 25 S. W. (2d) 1013; Middleton v. Middleton, 242 Ky. 209, 45 S. W. (2d) 1058. A contract between the parents, neither before nor after the commencement of a divorce suit, is binding as respects the custody and maintenance of minor children, so as to deprive the court of its jurisdiction. Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657. Where alimony is not awarded in a lump sum, but payable in installments, though the allowance made is accompanied by a judgment of absolute divorce, the power of the court is lost as to the judgment of divorce, unless it is upon a petition approved by the parties (section 2120, Ky. Stats.; section 426, Civil Code of Practice), but as to the subject-matter of alimony, payable in installments, the power of the court is continuous for the purpose at any time of making such alteration thereof as shall appear to the chancellor in the exercise of a judicial discretion, to be reasonable and proper. Franck v. Franck, 107 Ky. 362, 54 S. W. 195, 21 Ky. Law Rep. 1093; Bristow

v. Bristow, 51 S. W. 819, 21 Ky. Law Rep. 481; Staton v. Staton, 164 Ky. 688, 176 S. W. 21, L. R. A. 1915 F, 820; Sebastian v. Rose, 135 Ky. 197, 122 S. W. 120; La Warre v. La Warre, 208 Ky. 566, 271 S. W. 660; Fisher v. Fisher, 237 Ky. 823, 36 S. W. (2d) 635. If an absolute divorce is granted and permanent alimony is allowed in a lump sum, without reserving the jurisdiction of the judgment as to the alimony, after the expiration of the term in which the judgment is rendered, the court is without power to modify the alimony allowance, there being no implied or statutory authority conferring such jurisdiction, though section 2121 provides for the reservation of jurisdiction in judgments for divorce from bed and board. Scott v. Robertson, 212 Ky. 392, 279 S. W. 625; Jones v. Jones, 216 Ky. 810, 288 S. W. 737.

In Parsons v. Parsons, 80 S. W. 1187, 26 Ky. Law Rep. 256, a written contract was entered into between the parties by which the husband agreed to apply two-thirds of his annual income, not exceeding $2,400, for the support of his wife and their four children. A judgment was entered divorcing the parties, to which this was added:

"It appearing to the court that an agreement as to future support of plaintiff * * * and defendant has been entered into between the parties to this action and a trustee, which agreement is to be filed herein, this cause is retained for that purpose, and for all such orders as may be necessary and proper in reference thereto."

In Fisher v. Fisher, 237 Ky. 823, 36 S. W. (2d) 635, an order was entered providing that Mrs. Fisher should have the custody of the three children of herself and husband, and she should be paid by the husband $7 a week for the support of herself and seven children; and a provision was made in the judgment for modification after one year. A petition was filed in the Parsons Case and also in the Fisher Case for the modification of the judgment as to the allowance to the wife and children, and it was held that the husband in each case was entitled to be relieved of his agreement, and should only be required to pay the allowance for the support of the wife, which should be reasonable in view of their respective, present and probable future earning capacities. The judgment in the Parsons Case, as

well as in the Fisher Case, embraces an allowance both to the wife and the children of the parties. The court in both cases regarded that section 2123 furnished ample authority for the action of the court in discontinuing the allowance to the children. But in neither the Parsons nor the Fisher Case was the issue presented and determined as to the rights of the parties arising from the agreement which was the basis of the judgment of the court. In the present case, this question is directly presented for determination. It is easy of solution with the light of our opinions in former cases.

In Boone v. Ohio Valley Fire & Marine Ins. Co.'s Receiver, 246 Ky. 489, 55 S. W. (2d) 374, 375, it is said:

"It is elementary that a judgment entered by consent or agreement of the parties is not the judgment of the court, except in the sense the court allowed it to be recorded. Karnes v. Black, 185 Ky. 410, 215 S. W. 191. It will not be set aside, although it is alleged to have been obtained by fraud, unless it be shown that there was material misrepresentation of a material fact by one of the parties; that the party making it knew, or should have known, that it was untrue; that it was made for the purpose of having the party prejudiced thereby to rely on it; and that he had the right to do so, and did, in good faith, rely on it. Com. v. Harkness' Adm'r, 197 Ky. 198, 246 S. W. 803. A judgment by consent or agreement is not appealable, and can only be vacated for fraud, or want of consent, by the court entering it. The general rule that a decree or judgment on a matter outside of the issues raised by the pleadings is a nullity does not apply to a judgment entered by consent. Lodge v. Williams, 195 Ky. 773, 243 S. W. 1011; L. & N. R. R. Co. v. Wood, 198 Ky. 349, 248 S. W. 871; L. & N. R. R. Co. v. King, 216 Ky. 736, 288 S. W. 733."

See Keach v. Keach, 217 Ky. 723, 290 S. W. 708; Smith v. Smith, 236 Ky. 693, 33 S. W. (2d) 651, 652.

In Keach v. Keach, judgment for alimony in gross, payable in installments, was rendered, and, after the adjournment of the term of court at which it was rendered, a petition was filed in the original suit to have

the monthly installments to the wife reduced from $150 per month to $75 per month. Before the rendition of the judgment, an agreement had been entered into by the parties, settling the alimony, maintenance, and the property rights of the wife in the property of the husband, containing the provision that it should be entered as a judgment of the court, which was accordingly done.

In Smith v. Smith, a divorce action was pending, and the husband and wife entered into an agreement as to the alimony and property rights of the wife, which was entered as a judgment of the court. In the Keach Case, no attack was made upon the agreement. A modification of the allowance to the wife was sought solely on the ground that under the facts proven the power of the court to modify so much of the judgment as pertained to alimony was a continuing one, and that the modification of the order of allowance was within the discretion of the court. In the Smith Case, the agreement was attacked on the ground that it was procured by fraud. It was held by this court in both cases that a consent judgment for alimony, like an order made by consent in any other case, "can never be vacated without the consent of all the parties, unless it affirmatively appears that its rendition was procured by fraud or mutual mistake, the two essential prerequisites to the exercise of the power to annul or vacate such an order." Quoting from Stites v. McGee, 37 Or. 574, 61 P. 1129, it was written in the Smith Case that:

"A judgment by consent of parties is a judgment, the provisions and terms of which are settled and agreed to by the parties to the action to be affected by it, and it is placed upon and becomes of record by the consent and sanction of the court. The court does not settle the grounds or the terms of it; it is not the judgment of the court except in the sense that the court allows it to go upon the record and have the force and effect of a judgment; and therefore the court cannot amend, modify, or correct it, except by the consent of all the parties to it. It is essentially in its provisions, the agreement of the parties, and if the court should change it in any respect without consent, it would cease at once to be the judgment agreed upon by the parties; and such exercise of judicial power would be a practical denial of the right of the party prejudiced, or supposing himself prejudiced, to be heard ac-

cording to law. McEachern v. Kerchner, 90 N. C. 177. See, also, Morris v. Peyton, 29 W. Va. 201, 11 S. E. 954.''

B. M. Renick cites many cases from other jurisdictions to sustain his contention; but whatever may be the rule in other jurisdictions, Keach v. Keach and Smith v. Smith, supra, are fairly illustrative of the rule in this state.

It is shown by the evidence, without contradiction, that the health and financial condition of B. M. Renick and, the financial condition of Elizabeth T. Renick have materially changed since the rendition of the judgment in the action for divorce. It is shown that it will be a hardship on him to pay; the $150 per month. The parties fairly made and voluntarily entered into a contract settling their property rights and the wife's marital rights in the husband's estate, including the $150 per month alimony, which is the foundation of the judgment of the court directing the payment of the $150 per month to Elizabeth Renick, and requiring B. M. Renick to pay it to her. This court is without the power to make a new contract for them, simply because of a change in their circumstances or conditions. Parsons v. Parsons, 62 S. W. 719, 23 Ky. Law Rep. 223; Branch v. Branch's Ex'r, 98 S. W. 1004, 30 Ky. Law Rep. 417; Hite v. Hite, 136 Ky. 529, 124 S. W. 815; Hayden v. Hayden, 215 Ky. 299, 284 S. W. 1073; Sparks v. Sparks, 215 Ky. 508, 284 S. W. 1111; Hoskins v. Hoskins, 201 Ky. 208, 256 S. W. 1; Cole v. Waldrop, 204 Ky. 703, 265 S. W. 274; Middleton v. Middleton, 207 Ky. 509, 269 S. W. 552.

The contract between B. M. Renick and Elizabeth T. Renick, except as to the $150 allowance for alimony, under the judgment rendered herein, remains in force and binding on the parties to it. Having obtained by the contract a settlement of all claims between them, including her potential marital rights in his estate, it would be transgressing the principles of justice to annul the contract, in so far as it requires him to pay the $150 per month, and allow him to avail himself of the benefits of all the other provisions of the contract.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.